**UNITED STATES of America,
Appellee,**

v.

**Earl Claudis BEDWELL, Appellant.**

**No. 71-1341.**

United States Court of Appeals,
Tenth Circuit.

Feb. 23, 1972.

Rehearing Denied March 27, 1972.

---

26.  DiBella v. United States, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614, 618 (1962).

James A. Pusateri, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for appellee.

Hartzell J. Whyte, Kansas City, Kan., for appellant.

Before LEWIS, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

Earl Claudis Bedwell, a prison inmate at the federal penitentiary at Leavenworth, Kansas, was convicted of violating that part of 18 U.S.C. § 1792 which makes it unlawful to convey into a penal institution, or "from place to place

therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure, or disable any officer, agent, employee or inmate thereof * * *." Specifically, the charge against Bedwell was that he did knowingly and wilfully convey from place to place within the United States Penitentiary at Leavenworth, Kansas, a thing designed to kill, injure or disable an employee, officer, agent or inmate thereof, to wit, a knife, in violation of the aforesaid 18 U.S.C. § 1792. Trial by jury resulted in a guilty verdict and Bedwell was thereupon sentenced to a maximum period of five years to run consecutive to the sentence he was then serving. Bedwell now appeals and his only argument goes to the sufficiency of the evidence.

The Government's evidence against Bedwell is summarized as follows: (1) Bedwell, an inmate in the federal penitentiary at Leavenworth, was assigned to work on the first floor of the prison's shoe factory; (2) on the first floor of the shoe factory is an area designated as the carpenter shop and within the carpenter shop area is a belt sander; (3) during the noon hour a shoe factory foreman observed Bedwell running the edge of a metal object across the belt sander; (4) as the foreman approached Bedwell the latter dropped the object to the floor behind a box next to the sander; (5) the foreman retrieved the object thus dropped by Bedwell, the object being described as a knife or a "shiv"; and, (6) the knife was "home-made," with the metal portion thereof not being normally stored in the shoe factory, though the wooden handle and the rivets were from the carpenter shop area.

At the conclusion of the Government's case, Bedwell moved under Fed.R.Crim. P. 29 for a judgment of acquittal on the grounds that there was insufficient evidence to support the charge that he "conveyed from place to place" within the penitentiary a knife. The trial court denied the motion. Bedwell thereupon took the witness stand and testi-

fied in his own behalf. His testimony was that he found what he called a "tool" lying on a bench located in the carpenter area on the first floor of the prison shoe factory and that he picked up the tool and was edging it on the belt sander when the shop foreman came upon him.

At the conclusion of all the evidence Bedwell again moved for a judgment of acquittal on the ground that there was insufficient evidence that he conveyed a knife from place to place within the prison. This motion was denied. As indicated, the jury returned a guilty verdict and Bedwell now appeals.

■ On appeal Bedwell's position necessarily has to be that the entire record considered, there is simply insufficient evidence to sustain a conviction. *See* United States v. Greene, 442 F.2d 1285 (10th Cir. 1971), where we declared that a defendant by offering evidence after a denial of a motion for acquittal waives that motion and thereafter the question of the sufficiency of the evidence to sustain a conviction is to be determined by an examination of the entire record. So, our precise task is to determine from the entire record whether there is sufficient evidence to support the jury's determination that Bedwell had conveyed a knife from "place to place" within the institution. Let us first examine the statute in question.

■ As we read it, 18 U.S.C. § 1792 does not make it a crime for a prison inmate to "possess" a knife. Rather, the gravamen of the charge is that Bedwell conveyed a knife from place to place within the prison. A reading of the entire statute leads us to conclude that it was the legislative intent to make unlawful various described acts which might contribute and lead to a prison riot. That the statute is to be strictly construed is evidenced by United States v. Rodgers, 419 F.2d 1315 (10th Cir. 1969), where we held that another portion of 18 U.S.C. § 1792 which makes it a crime to *instigate* or *connive* to

cause a prison riot is not broad enough to include actual *participation*, as opposed to instigation or connivance.

■ The Government concedes that mere possession of a knife by Bedwell is not sufficient, but contends that its evidence did make out a *prima facie* case of conveying from place to place. It is first argued that the act of running the blade across the sander in itself constitutes conveying from place to place and that in any event the act of dropping the knife to the floor would be such a conveyance.

Our attention has not been directed to any authority bearing on the precise issue here raised. However, it would appear to us that in giving words their normal meaning it would be stretching to say that the movements above described constitute a "conveying from place to place" within a penal institution. To us, the phrase "conveying from place to place" denotes something more than a slight or unsubstantial change in the situs of an object. In our view, application of the rule of strict construction precludes a finding that in running the blade across the sander or in dropping the knife to the floor Bedwell was conveying a knife from place to place within the penitentiary.

The Government alternatively contends that its evidence establishes *prima facie* that the metal portion of the knife must have been conveyed from place to place within the penitentiary, i. e., it had to be brought into the shoe factory from some other place in the penitentiary. We deem the evidence in this regard to also be legally insufficient.

It is true there was testimony that the metal part of the knife was not normally to be found in the shoe factory. However, the wooden handle and the rivets used to affix the handle to the metal were used on a more or less daily basis in this particular area. Accordingly, as the Government suggests, the import of such evidence is that the knife itself was in all probability "made" in the shoe

factory. We hold, however, that such evidence falls short of proving beyond a reasonable doubt, *prima facie,* that a knife had been conveyed from place to place within the prison.

■ We recognize that proof of present possession of a knife may under certain circumstances permit the inference that there had been an earlier conveying of the knife from place to place within the prison. *See,* for example, United States v. Roche, 443 F.2d 98 (10th Cir. 1971), where a search revealed a weapon concealed, and cleverly so, on the prisoner's person. Although the matter was not in issue in *Roche* the circumstances surrounding the discovery of the weapon artfully concealed on the defendant's body would clearly permit the inference that he had been, prior to the discovery of the weapon, conveying the same from place to place within the institution. Such, however, is not the present case.

■ Laying aside the Government's evidence, it is suggested that by his own testimony Bedwell supplied any gap in the Government's case. We do not so view his testimony. Bedwell testified that he found the knife on a bench near the belt sander. How far the bench was from the sander was not shown, but it would appear that it was very close by. Suffice it to say that Bedwell's testimony in our view is insufficient to sustain a conviction on a charge of conveying a knife from place to place within the prison.

In sum, the entire record considered, the evidence falls short of showing a violation of the statute under which Bedwell was prosecuted. Perhaps the statute should make it unlawful for a prison inmate to possess a knife, but the simple fact of the matter is that it doesn't.

Judgment reversed and cause remanded with direction that the trial court dismiss the indictment.