**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alfred J. JASPER,
Defendant-Appellant.**

**No. 74–1340.**

United States Court of Appeals,
Tenth Circuit.

Argued Aug. 18, 1975.

Decided Sept. 17, 1975.

Certiorari Denied Jan. 19, 1976.
See 96 S.Ct. 859.

Monti L. Belot, Asst. U. S. Atty. (E. Edward Johnson, U. S. Atty., on the brief), for plaintiff-appellee.

J. Gregory Walta of Walta, Cannon, Gaddis & Kin, Colorado Springs, for defendant-appellant.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a criminal conviction. The indictment charged that the appellant had unlawfully conveyed

from place to place in the Federal Penitentiary at Leavenworth a weapon or thing designed to kill, injure or disable any officer, agent, employee or inmate contrary to 18 U.S.C. Section 1792. Following a trial to a jury the defendant was convicted and sentenced to a term of eight years.

On October 11, 1973, a disturbance occurred in the penitentiary, and part of it took place in cell 16 where the defendant together with an inmate by the name of Roberts and one by the name of Andrews were confined. One or more of them had kicked open the outer wooden door. An officer ordered them out of the cell one by one. Inmate Andrews came out first. He was followed by the appellant who, as he approached the door to the cell, was observed to have a bulge in one of his pants pockets. Also, the tail of a sock hung from the pocket. When he passed one of the officers he dropped his hand to his pocket and the officer grabbed the hand together with a sock filled with 14 ounces of splintered glass. Appellant had traveled a distance, according to one witness, of 14 feet. There are some conflicts in the testimony, but it would appear that Jasper had proceeded a distance of approximately 13 feet when the officers discovered the glass-filled sock.

The primary basis for seeking reversal is bottomed on the contention that the movement of the glass-filled sock was not the kind of conveying from place to place within an institution contemplated by the statute. This is the principal issue presented.

A second point advanced by appellant is that there was an improper selection of the jury because among the 26 persons comprising the jury panel for appellant, there were 10 who had been challenged in a kindred case, *United States v. Hill*, No. 74–1339, which trial had taken place immediately prior to the one here in question. This also involved a Leavenworth inmate charged with offenses arising out of the same general disturbance.

Thirdly, objection was made and is now submitted here that the trial court committed error in questioning the jury as to whether they had read the publicity in the papers while the trial was going on concerning an escape attempt at the Shawnee County Jail.

It is also argued that the court erred in instructing the jury as to the credibility of inmate witnesses and particularly in telling the jury that the testimony of such inmates was to be scrutinized with care.

I.

What constitutes conveyance from place to place within a federal penal institution? The answer is to be gleaned from examination of the rulings in several cases in our court.

Although it is somewhat unclear as to what constitutes a conveyance, there can be no question but that the statute does not punish mere possession. *See United States v. Bedwell*, 456 F.2d 448 (10th Cir. 1972). The *Bedwell* panel went further and said that a slight or insubstantial change in the situs of the object was not enough.

Other of our decisions hold that the distance of the conveyance need not be great. *See United States v. Acosta*, 495 F.2d 60 (10th Cir. 1974). There the defendant was escorted by a guard for a distance of only 15 feet. Nevertheless, the conviction was upheld. And in *United States v. Swindler*, 476 F.2d 167 (10th Cir.), *cert. denied*, 414 U.S. 837, 94 S.Ct. 183, 38 L.Ed.2d 72 (1973), the defendant having been ordered to proceed, traveled some 40 feet. There are cases involving longer distances such as *United States v. Meador*, 456 F.2d 197 (10th Cir. 1972). The defendant carried a knife for 100 yards. In *United States v. Acosta, supra*, the distance was comparable to the distance here, namely, 15 feet. The court said that it was more than mere possession.

We conclude then that the only condition which our decisions condemn as insufficient is mere possession (and

hence non-conveyance) as in *Bedwell.* There is no recognized defense that the movement was involuntary. *See, United States v. Swindler, supra, United States v. Acosta, supra,* and *United States v. Meador, supra,* wherein it was pointed out that virtually all movements within a prison are on orders of prison officials.

## II.

Was the jury improperly selected? We conclude that it was not.

■ Defendant argues that jurors who had been challenged in the Hill trial were ineligible to sit on the jury in the instant case. He in effect maintains that being disqualified in the one trial renders service in a similar case questionable. However, the statute, 28 U.S.C. § 1866(c), does not preclude service on a second jury even though there has been a challenge for cause in a prior case if the basis for initial exclusion would not be relevant to ability to serve on the subsequent jury.

28 U.S.C. § 1867 sets forth the procedure for attacking the composition of the jury.[1] It is necessary under this section that a motion be filed prior to the beginning of the voir dire examination. This was not followed in this case and the courts have enforced this time limitation.[2]

■ The appellant here also failed to comply with 28 U.S.C. § 1867(d) which requires that a motion to dismiss or stay proceedings for failure to comply with the Act must be accompanied by a sworn statement of facts establishing a substantial failure to comply with the Act. Clearly the appellant failed to comply

with the procedural prerequisites. It is unnecessary to rest our decision on this procedural ground because there is not a violation of substance. The cases do not hold use of jurors who have been peremptorily challenged to be a per se violation.

The important case in our Circuit is *Casias v. United States,* 315 F.2d 614 (10th Cir.), *cert. denied,* 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963). There, of the 44 members of the panel presented for selection at the defendant's trial, 43 had sat on one or more previous similar cases in which prosecution witnesses had testified. Nevertheless, an equally divided en banc panel of this court affirmed the conviction stating that a juror is not disqualified to sit in a criminal case by reason of the fact that he had previously sat on a similar case arising out of a separate, distinct and independent transaction. Our facts are less extreme and affirmance here does not require us to fully embrace the *Casias* result.

## III.

■ Complaint is made concerning the manner of questioning the jury regarding their knowledge of an escape attempt on the part of witnesses subpoenaed by the defendant to testify at the trial. These were inmates from Leavenworth who were in the local jail. The court asked guarded questions and received negative answers. In the light of the decisions of this court in such cases as *United States v. Mares,* 383 F.2d 805 (10th Cir. 1967), the court was almost required to ascertain whether any of the jurors had read the article and whether

---

1. This section provides:

   In criminal cases, *before the voir dire examination begins,* or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier,* the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

2. *Paige v. United States,* 493 F.2d 22 (5th Cir. 1974); *United States v. DeAlba-Conrado,* 481 F.2d 1266 (5th Cir. 1973); *United States v.*

*Noah,* 475 F.2d 688 (9th Cir.), *cert. denied,* 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973); *United States v. Dellinger,* 472 F.2d 340 (7th Cir. 1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *United States v. Silverman,* 449 F.2d 1341 (2d Cir. 1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972); *United States v. Rickus,* 351 F.Supp. 1386 (E.D.Pa.1972), *aff'd,* 480 F.2d 919 (3d Cir.), *cert. denied,* 414 U.S. 1006, 94 S.Ct. 365, 38 L.Ed.2d 243 (1973); *United States v. Kahn,* 340 F.Supp. 485 (S.D.N.Y.1971), *aff'd,* 472 F.2d 272 (2d Cir.), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973).

they had drawn any connection between the escape and the cases being tried. We fail to see that there was any prejudice in this.

### IV.

Was the court's instruction on credibility of inmate witnesses erroneous?

Exception is taken to that part of the inmate witness cautionary instruction which told the jury that they were to scrutinize the testimony carefully.[3] This instruction which was offered by the government was somewhat at variance with the instruction tendered by the defendant bearing on felony convictions, which instruction pertained to the effect of a conviction of a felony on the credibility of the witness. *See* Devitt and Blackmar, Federal Jury Practice and Instructions § 12.06 (2d ed. 1970). The thrust of the defendant's request was that the testimony of the witness may be impeached or discredited by a showing that the witness had been convicted of a felony. In effect, the trial court told the jury that the credibility of the inmate was to be determined the same as any other witness, but that their testimony should be carefully scrutinized considering the fact that the witnesses have been convicted of a crime.

■ We unhesitatingly concede that it would have been better had the court not included this statement about careful scrutiny. At the same time, we are unable to find case law holding that such inclusion is wrong. Indeed Professor Wright in his work on Federal Practice and Procedure § 496 states that a witness may be impeached by a showing of prior criminal convictions. He goes on to say:

In such a case it may under some circumstances be appropriate for the court to inform the jury of their duty to scrutinize the testimony of the witness with care . . .

2 C. Wright, Federal Practice and Procedure § 496 (1969). Several cases are cited in support of the mentioned proposition. *United States v. Cobb,* 446 F.2d 1174 (2d Cir.), *cert. denied,* 404 U.S. 984, 92 S.Ct. 451, 30 L.Ed.2d 369 (1971); *United States v. Margolis,* 138 F.2d 1002 (3d Cir. 1943); *Sandquist v. United States,* 115 F.2d 510 (10th Cir. 1940); *United States v. Segelman,* 83 F.Supp. 890 (W.D.Pa.1949). It is arguable that the question has typically arisen in situations in which the government has presented the witness. We do not see any basis for distinguishing these decisions on that account. We conclude that the instruction in question, although not constituting a clarifying influence on the particular subject matter, is not to be considered prejudicial because it is not of a nature to have any substantial effect over and above the aspect of a felony conviction so as to require reversal, especially in view of the fact that the instruction makes clear to the jurors that they are to consider the credibility and weight to be given to the testimony of an inmate the same as the jury would consider the testimony of any other witness.

\* \* \*

■ We have considered the involved argument regarding denial of some part of appellant's request for issuance of process for additional witnesses. We see no abuse of discretion in the court's actions granting and denying the requests since the court is not required to accede to every demand of this nature that the accused makes. Here again prejudice is not shown.

The judgment of the district court is affirmed.

---

**3.** The instruction in full was as follows:

Some of the witnesses in this case have been shown to be inmates of the United States Penitentiary, each of them having been convicted of a felony, and you are to determine their credibility and the weight to be given their testimony the same as you would the testimony of any other witness. However, their testimony should be carefully scrutinized by the jury, and the fact that the witnesses may have been convicted of a crime may be considered by you in determining what credit you should give them as witnesses and what weight you will allow their testimony.